UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL EASON,

Plaintiff,

v.

JOSEPH LEHMAN,

Defendant,

Case No. C04-5845RBL

REPORT AND RECOMMENDATION

**NOTED FOR**: **April 28th, 2006**

This 42 U.S.C. § 1983 Civil Rights has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. Before the court is defendant's motion for summary judgment. (Dkt. # 22). Plaintiff contends he had a liberty interest in release on his earned early release date and was entitled to due process prior to a decision not to release him. (Dkt. # 5). Plaintiff has not responded to the motion for summary judgment. Pursuant to Local Rule 7, plaintiff's failure to respond is considered as an admission the motion has merit.

Plaintiff named as defendants, Joseph Lehman, former Secretary of the Department of Corrections.

STANDARD

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630(relying on Anderson, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

The court must liberally construe plaintiff's pleadings because he is acting pro se. However, there are limits as to how far the court may go in construing a complaint. The court cannot add facts to a complaint that have not been plead and cannot supply essential elements to a complaint that the plaintiff has failed to plead. Pena v. Gardner, 976 F.2d 469 (9th Cir. 1992).

FACTS

Plaintiff has not contradicted defendants facts which are adopted as follows:

Michael S. Eason was previously in the custody of the Washington State DOC pursuant to a judgment and sentence entered in Pierce County Superior Court. On September 4, 1996, Mr. Eason pled guilty to two counts of Child Molestation in the First Degree. Exhibit 1, Declaration of Virginia Shamberg, Attachment A, Judgment and Sentence in State v. Eason, Pierce County Superior Court Cause No. 96-1-02132-8. The trial court imposed a period of 150 months confinement with a 36 month term of community placement "or up to the period of earned early release awarded pursuant to RCW 9.94A.150(1) and (2) whichever is longer" upon his release. Id.

Mr. Eason's earned early release date was November 20, 2001. Exhibit 2, Declaration of Tammy Laveaux, Attachment A, Legal Face Sheet. Mr. Eason's sentence expired on August 27, 2002. Id. Mr. Eason was released from DOC custody on August 27, 2002. Id.; see also Exhibit 3, Declaration of Sara J. Olson, Attachment A, Deposition Transcript of Michael Eason, page 13: line 25-page 14:line 4. Mr. Eason is currently a resident at the Special Commitment Center (SCC), a Department of Social and Health Services facility on McNeil Island. According to Mr. Eason's deposition testimony, he was civilly committed as a sexually violent predator on June 20, 2005. Dep. Transcript 6:21-25.

Inmates who have a community custody requirement in their judgment and sentence and are required by law or their judgment and sentence to have a release plan approved by DOC, may be released to community custody on or after their earned early release date only if their release plan is approved by DOC and the statutory notification requirements for the release of such offenders are satisfied. Exhibit 4, Declaration of Kathryn Bail at ¶ 9. Under DOC policy 350.200, an inmate's transition into the community on community custody status follows the approval of an inmate's proposed release plan, including a proposed release address which does not violate the conditions of the inmate's judgment and sentence, does not place the inmate at risk to re-offend, and does not present a risk to victim safety or community safety. Id. ¶ 11. See also Exhibit 4, Attachment A, DOC Policy 350.200.

DOC Policy 350.200 provides the process for an inmate to secure DOC approval of a release plan in order to be released to community custody. Id. ¶ 10. DOC Policy 350.200 is available to all inmates. Id. In determining whether an inmate's proposed plan to release to community custody is acceptable, DOC staff conduct a review of all relevant documentation including, but not limited to, the inmate's judgment and sentence, field files, classification documents, psychological/psychiatric and forensic psychologist reports, the inmate's assigned risk managen

Proposed release plans for possible transfer to community custody status for sex offenders are investigated by a Classification Counselor or Community Corrections Officer (CCO) to determine if the plan is viable. Exhibit 5, Declaration of Kimberly Acker ¶ 7. Minimum requirements include: an actual location of a physical address, not a contact address or post office box; the occupant/owner of the property is knowingly allowing the sex offender to reside there; the sex offender intends to physically reside in the residence; and the placement does not put the offender in violation of his/her conditions of release. Id. The proposed sponsor shall be informed of the offender's criminal history, sex offender notification level, community notification, and conditions of release. Id. The Classification Counselor or CCO will investigate. Id.

The CCO will assess the degree of risk for victims and potential victims of similar age or circumstances when investigating the proposed release plans for sex offenders. Id. See also Exhibit 4, Attachment A, at 10-11. A release plan will be denied if the classification Counselor or CCO determines that the plan will place the offender in circumstances where there is a likely risk to reoffend. Exhibit 5 ¶7. See also Exhibit 4 ¶ 14.

If a release plan is denied for an offender who appears to meet the definition of a sexually violent predator, as determined by the ESR SVP Subcommittee, the offender may submit a new or revised plan for DOC's review. Id. ¶ 15. See also Exhibit 4 ¶ 14. If the sex offender is ultimately unable to locate a viable release address or all of the offender's proposed plans for possible transfer to community custody status are denied, he/she shall be released on the date his/her maximum sentence is reached. Exhibit 5 ¶ 15; Exhibit 4 ¶ 14. Counselors continue working with inmates up to their maximum release date encouraging inmates to find the best possible place for them to go, even though once inmates have reached their maximum release date, they must be released without regard to their plan. Exhibit 4 ¶ 14.

According to Mr. Eason's sworn testimony, Mr. Eason submitted two release plans, which were each denied. According to Mr. Eason, he submitted a release plan to his grandmother's house in Tennessee in 2001. Dep. Transcript 22: 3-6. When questioned, Mr. Eason acknowledged that he did not submit the plan to a particular person, but, rather, he spoke with his counselor about the proposed plan. Dep. Transcript 22:10-19. Mr. Eason has offered no evidence, other than his testimony, that he either submitted a plan or that the plan was denied. Mr. Eason's chrono report indicates that this plan was never submitted, but that he did discuss it with his counselor, Stephanie Stehl. Exhibit 6, Declaration of Ellen Winter, Attachment A, DT37 Chrono Report for Michael Eason. Ms. Stehl wrote in Mr. Eason's chrono report entry for July 31, 2001, "He stays in contact with this father who lives in Arizona and his grandparents in Tennessee. He does not have any release plans at this time." Id. Mr. Eason's chrono report also reflects that he spoke with another counselor, Frances Linder, about his release plans on August 29, 2001. Counselor Linder wrote in Mr. Eason's chrono report entry for that date,

> He said he wanted me to review his release plans and he was being looked at for 7109. I told him his plans appeared to be generic and without personal insights, he would need to do some research to find out who, what where and how of the employment he wanted. To decide on an area he wanted to live, and how he wanted to live his life.

Id. Mr. Eason asserts that his plan to release to an address in Tennessee was denied because he was being evaluated for civil commitment under chapter 71.09 RCW. Dep. Transcript 24:2-5. However, after additional questioning, Mr. Eason admitted that any plan to release to Tennessee would have to be approved by the state of Tennessee. Dep. Transcript 24:13-17. Mr. Eason also admitted that he did not receive any documents from Tennessee indicating that they had approved of his release to that state. Dep. Transcript 24:24-25:11.

Mr. Eason alleges that he submitted a second plan. This plan was to live at his step-father's residence. Dep. Transcript 25: 16-18. Again, Mr. Eason alleges that the plan was denied because he was being evaluated for civil commitment under chapter 71.09 RCW. Dep. Transcript 26:1-5. However, Mr. Eason's chrono report entry for February 28, 2001, written by former DOC counselor Sandra Ellis, states, "Has support from father in Arizona, but father has written that he cannot offer release help." Exhibit 6, Attachment A. Further, Counselor Ellis's chrono report entry for March 12, 2001 states, "I received a copy of letter Assoc Supt wrote responding to P's stepfather's letter (which I never saw). Supt notes P's stepfather said he could not offer any release resources – financial or housing – in Arizona." Id. Again, Mr. Eason has offered no evidence, other than his testimony, that he either submitted a release plan or that the plan was denied. Mr. Eason did not submit any other release plans for consideration. Dep. Transcript 27: 18-19. However, DOC submitted a release plan on Mr. Eason's behalf for proposed release to Tacoma. Exhibit 1, Attachment B, Community Release Referral.

The Plaintiff investigated other community resources, but they would not accept sex offenders. Dep. Transcript 29:18-22.

(Dkt. # 22, pages 2 to 6 (Footnote Omitted)).

DISCUSSION

Defendant asks for summary judgment and argues plaintiff has no entitlement to release prior to expiration of his sentence, this case is barred by the "favorable termination doctrine", Plaintiff has no liberty interest in early release, lack of personal participation, Eleventh Amendment immunity, and qualified immunity. (Dkt # 22, page 2).

1. Release prior to expiration of a sentence and state created liberty interests.

Washington State's complex sentencing system allows some inmates to earn time off their sentence by programing and good behavior while incarcerated. Other inmates, like Mr. Eason, may not earn time off their sentences but instead may become eligible for placement in a community under supervision in lieu of earning good time or earned time.

RCW 9.94A.728 (2) provides:

> No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
> ...
>
> (2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
>
> (d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;

When an inmate is first transferred to the Department of Corrections, staff at the Department calculates at least three possible release dates for the inmate. The first of these dates is the maximum release date. A maximum release date is the date an inmate will be released because they have served the entire sentence imposed. The second date is an earned early release date, ERD. This is the date an inmate may be released if they earn all available sentence reductions and do not lose earned time for misbehavior. Release on this date is not automatic for all inmates. The third date the department calculates is an adjusted release date. This is the projected date when an inmate may be eligible for release if they lose no further good time or earned time. This date along with the earned early release date changes when an inmate does not earn or loses a possible reduction in their sentence. By statute an inmate cannot receive earned early release credits before they have been earned. "The correctional agency shall not credit the offender with earned release credits in advance of the offender actually earning the credits." See, RCW 9.94A.728 (1).

Certain classes of inmates have periods of supervision at the end of their incarceration. These inmates are not allowed to earn earned early release because of the nature of their crime. These inmates receive supervision by way of community placement or community custody "in lieu of" earned early release. Plaintiff is a person whose Judgment and Sentence included community placement or community custody following release. Defendant contends plaintiff was not entitled to general release on his earned early release date. Plaintiff has not come forward with any evidence to contradict this assertion. Thus, this action deals with an inmate who reached his potential release date and was not released on that date because community custody or community placement was imposed in the Judgment and Sentence.

The court begins by noting that an inmate has no constitutional right to release before expiration of the sentence. Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979). Nor have the Washington state appellate courts recognized an independent state created interest in amassing early release credits. In Re Galvez, 79 Wash. App. 655 (1995). This does not end the court's analysis because in this case the court is not concerned with the granting or denial of earned early release time. Under the facts of this case the plaintiff had been granted the credits or time off his sentence and was eligible for release, subject to the approval of the release plan by the Department of Corrections and whatever public notification may be mandated by state law.

The court must decide whether the Due Process Clause of the 14th Amendment requires a hearing

prior to denial of a release plan. The court cannot overemphasize that the interest at issue in this case must be a state created liberty interest and is not an interest found under the 14th Amendment Due Process Clause itself. Normally the court would first determine whether there is in fact a state created liberty interest. The Washington State Court of Appeals found there to be a "limited liberty interest" in Crowder, but the court did not define what a "limited liberty interest" is and approved post depravation remedies which only included the Department helping Mr. Crowder to obtain release. In Re Crowder, 97 Wash App. 598 (1999). No hearing of any type was ordered.

In Dutcher the same court emphasized it was operating under the State Rule of Appellate Procedure 16.4 which did not require a finding of a constitutional violation and only required a finding of unlawful restraint under state law. Dutcher 114 Wash. App. at FN 3 and 4; Citing In Re Cashaw, 123 Wash. 2d 138 (1994). Cashaw specifically rejected the contention that procedural rules which are not outcome determinative create a liberty interest protected by Due Process. In Re Cashaw, 123 Wn 2d. at 146. In Cashaw the Washington State Supreme Court required the Indeterminate Sentence Review Board to follow its own rules and granted relief using the State Rule of Appellate Procedure 16.4. This grant of relief was not based on a finding of any constitutional violation.

The Washington State Supreme Court in Cashaw was careful to grant relief only on state grounds. Indeed, the State Supreme Court in Cashaw analyzed what is needed to find a state created liberty interest and found no due process violation in that case. The State Supreme Court's analysis in Cashaw is instructive regarding what constitutes a liberty interest and when such interests rise to the level of a state created liberty interest protected by the Due Process Clause of the United States Constitution. This court adopts the analysis set forth by the Washington State Supreme Court. The court stated:

> Liberty interests may arise from either of two sources, the due process clause and state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal constitution does not, of its own force, create a liberty interest under the facts of this case for it is well settled that an inmate does not have a liberty interest in being released prior to serving the full maximum sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); Ayers, 105 Wash.2d at 164-66, 713 P.2d 88; Powell, 117 Wash.2d at 202-03, 814 P.2d 635.
>
> However, as indicated above, state statutes or regulations can create due process liberty interests where none would have otherwise existed. See Hewitt, 459 U.S. at 469, 103 S.Ct. at 870; Toussaint, 801 F.2d at 1089; Powell, 117 Wash.2d at 202-03, 814 P.2d 635. By enacting a law that places substantive limits on official decisionmaking, the State

> can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest. See Toussaint, 801 F.2d at 1094.
>
> For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "**specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow**". Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d 132, 134 (8th Cir.), cert. denied, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.**

In Re Cashaw, 123 Wn 2d at 144 (emphasis added).

The Department has been mandated by statute to implement a system that allows for the possibility of early release. For some persons the release is automatic when they reach their earned early release date because they have no supervision following incarceration. Inmates like Mr. Eason, facing community placement or community custody, can earn a potential reduction in sentence and be placed on community placement or community custody at the discretion of the Department of Corrections.

RCW 9.94A.728(2)(d) grants the Department the ability and the discretion to deny a release plan for any person who would receive community custody if the Department determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to re-offend, or presents a risk to victim or community safety. Thus, whatever limits have been placed on the Department are not outcome determinative and there is no state created liberty interest. The Department still has a significant degree of discretion in granting or denying release to community placement or community custody. As the statute itself notes "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." (Dkt. # 25, Exhibit 3, page 3, RCW 9.94A.728 (2)(d)).

A careful reading of the Washington State Court of Appeals holding in Dutcher shows the court was acting pursuant to state Rule of Appellate Procedure 16.4 and was using the lesser standard of review which did not require a finding of a constitutional violation. The ruling in Dutcher that the Department must follow the state statutory system and consider plans on the merits does not equate to a finding of a state created liberty interest in release and the holding in Dutcher did not eliminate the Departments discretion.

There has been a progression in the State Court of Appeals decisions in which their terminology

and reasoning was expanding. In Crowder the court found only a "limited liberty interest." In Re Crowder, 97 Wash. App. 598 (1999). In Dutcher, the court used the reasoning of Cashaw to grant relief solely on state grounds but inaccurately stated the interest was a "limited but protected liberty interest." Dutcher, 114 Wash. App. at 758. Now, in a more recent case, the same court is citing Cashaw and Dutcher for the proposition that there is a limited liberty interest protected by due process. In Re Liptrap, 127 Wash. App. 463, 469 (2005). To the extent that Liptrap, finds a state created liberty interest in release credits for persons subject to community custody the cases cited do not support the proposition and the court declines to follow this decision. A potential for release based on the Department exercising its discretion does not equate to an absolute interest in release that a person with earned time and no post release supervision enjoys.

As noted above neither Crowder nor Dutcher found a state created liberty interest. Under the analysis set forth in Cashaw there is no federally protected interest in this case. The holding of Dutcher is that an agency follow its own rules and statutes. While in some cases that may become outcome determinative and raise to the level of a state created liberty interest it is not outcome determinative in this case because of the amount of discretion left with the Department.

There is not a state created liberty interest at stake in this case. The statutes creating the potential of community custody do not set forth any mandate that the Department hold hearings and only mandate the Department consider properly submitted release plans for persons who have reached their possible release date subject to community custody or community placement after release. Accordingly the defendant's motion for summary judgment should be **GRANTED.** Dismissal under this analysis is **WITH PREJUDICE.**

In the alternative the court considers defendants arguments regarding the favorable termination doctrine and lack of personal participation.

2. Favorable termination.

When a person confined by the state is challenging the very fact or duration of his physical imprisonment, and the relief he seeks will determine that he is or was entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). In June 1994, the United States Supreme Court held that "[e]ven a

prisoner who has fully exhausted available state remedies **has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.**" Heck v. Humphrey, 114 S.Ct. 2364, 2373 (1994)(emphasis added). The court added:

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Id. at 2374. "[T]he determination whether a challenge is properly brought under § 1983 must be made based upon whether 'the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment.' *Id.* If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997) (*quoting* Edwards v. Balisok, 117 S.Ct. 1584, 1587 (1997)).

The court has been reluctant to apply this doctrine in cases where the person has been released from confinement on the conviction that is the subject of the action because habeas corpus petitions are subject to an in custody requirement. 28 U.S.C. § § 2241 (c), 2254 (a), 2255. An expired or completely served conviction does not meet the "in custody" requirement even if the conviction is later used to enhance a sentence. Garlotte v. Fordice, 515 U.S. 39 (1995).

However, On March 27th, 2006 the Ninth Circuit decided the case of Guerrero v. Gates, Ninth Circuit case number 2-56017. The Court found that the fact that Guerrero "is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift *Heck's* bar." Guerrero at p. 3261. Further, it is clear that the exceptions to this rule, as discussed in Guerrero, are not applicable to Mr. Eason. For a person to be exempt the person must have diligently attempted to exhaust the issue in habeas and been unable to do so either because the sentence was too short or because something prevented the person from bringing the action. Defendant would be entitled to dismissal of this action **WITHOUT PREJUDICE** under this doctrine.

3. Personal Participation.

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation.

Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiff names the former Secretary or the Department Corrections as a defendant but fails to articulate what action was taken by the defendant. (Dkt. # 5). In his deposition plaintiff alleges Mr. Lehman was named because he was the "captain of the ship." (Dkt. # 22, page 16). There is no respondeat superior liability under § 1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692 (1978).

Again defendant Lehman is entitled to dismissal **WITH PREJUDICE** under this analysis.

CONCLUSION

For the reasons stated above the court should **GRANT** defendant's motion for Summary Judgment and dismiss this action **WITH PREJUDICE**. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 28h, 2006**, as noted in the caption.

DATED this 31st day of March, 2006.

*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge